# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:19-cr-00333-IM |
| v. | **OPINION AND ORDER** |
| **RONALD CLAYTON RHODES** and **LORENZO LARON JONES**, | |
| Defendants. | |

Scott Erik Asphaug, Acting United States Attorney, Lewis S. Burkhart, Amy E. Potter, Leah K. Bolstad, Parakram Singh, Sarah Barr, Steven T. Mygrant, and Thomas H. Edmonds, Assistant United States Attorneys, United States Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, Oregon 97204. Attorneys for the United States.

Richard L. Wolf, Richard L. Wolf, PC, 12490 NW Marina Way, Slip A, Portland, OR 97231. Michael R. Levine, Levine & McHenry LLC, 1050 SW Sixth Avenue, Suite 1414, Portland, OR 97201. Ryan T. O'Connor, O'Connor Weber LLC, 1500 SW First Avenue, Suite 1090, Portland, OR 97201. Attorneys for Defendant Jones.

**IMMERGUT, District Judge.**

Defendant Lorenzo Laron Jones is charged with racketeering conspiracy, 18 U.S.C. § 1962(d); murder in aid of racketeering, 18 U.S.C. § 1959(a)(1); using and carrying a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(iii); and causing death through use of a firearm, 18 U.S.C. § 924(j). ECF 73. Defendant now moves to suppress evidence seized pursuant to several search warrants and, in some cases, court orders. Defendant also requests a Franks

PAGE 1 – OPINION AND ORDER

hearing with regard to one of the warrants. First, Defendant seeks to suppress the evidence found as a result of searches of cell phones and cell phone records, including location data, conducted pursuant to multiple warrants and orders. ECF 256 at 8. Second, Defendant seeks to suppress the evidence resulting from searches of 2762 Willakenzie Drive in Eugene, Oregon; 1146 Brockton Place in Eugene, Oregon; FOE Media Group, 1650 West Eleventh Avenue, #6 in Eugene, Oregon; Defendant's DNA; and 1712 Elkay Drive in Eugene, Oregon. ECF 257 at 4. Third, Defendant seeks to suppress the evidence resulting from searches of his cell site location information ("CSLI"), call detail records, subscriber information, and precision location information. ECF 267 at 6. This Court held a hearing on Defendant's motion on April 8, 2022. ECF 286.

This Court finds that Defendant lacks standing to challenge the orders and warrants authorizing the search or seizure of places or things that belong to others, in which Defendant had neither a property interest nor a reasonable expectation of privacy. As to the remaining warrants and orders, this Court finds that they were properly issued, supported by probable cause, and not overbroad. Thus, Defendant's motions are DENIED.

## BACKGROUND

### A. The Butler Shooting

On September 17, 2017, Wilbert Butler was shot while leaving a party at an apartment complex in Southeast Portland. ECF 151 at 8, 11. Based on the presence of both 9mm caliber and .40 caliber casings at the scene, Portland Police Bureau ("PPB") Detective Mark Slater concluded that there had been two shooters. *Id*. at 9. A witness described observing a Black male firing in a westerly direction from where the .40 caliber casings were found, and described the subject as a Black male, average height, skinny, short-haired, and wearing a plain white t-shirt. *Id*. at 10.

On September 18, 2017, a family member of Butler called Detective Slater and stated that the person who shot her brother was named "Jo Jo McCool," also known as "Young Terrific;" that McCool and the victim had been at a party together; and that the victim helped McCool get away from the party. *Id*. at 11. On September 20, 2017, Detective Slater received a call from another witness who said that he had seen two Black males running away from a parking lot near the scene of the shooting. *Id*. The witness stated that one of the Black males was not wearing a shirt and that the other was wearing a white t-shirt; both men got into a "gray or silver" "square or boxy-looking sedan" driven by a third party. *Id*. at 11–12. Detective Slater offered some types of cars matching that description, and the witness indicated that it was a Chrysler 300. *Id*. at 12. At this point, Detective Slater had no information or basis to believe that Defendant Jones was involved in the shooting.

At 1:45 p.m. on September 20, 2017, Special Agent Jason Murray from the Drug Enforcement Administration called Detective Slater and informed him that a confidential, reliable informant had told him that the shooters were Lorenzo Jones and "Little Joe." *Id*. On September 22, 2017, PPB Officer Colby Panter called Detective Slater and informed him that he had observed Defendant Jones driving a Chrysler 300 in Eugene, Oregon. *Id*.

On September 27, 2017, PPB obtained surveillance footage from the apartment complex, which Detective Slater reviewed. *Id*. at 13. The footage shows a man identified as Joel McCool enter the apartment at 7:44 p.m. on September 16 wearing a black sweater, reddish/orange-colored pants, and white tennis shoes with distinctive black striping; then at about 12:50 a.m. on September 17, McCool leaves the building shirtless but in the same pants and shoes. *Id*. The footage shows Jones, identified by his distinctive clothing (sweatpants and a shirt with an animal face), facial hair, and tattoos, with McCool at 1:29 a.m., as well as both Jones and McCool

carrying objects "similar in shape and size to a handgun" in the minutes before and after the shooting. *Id*. at 14.

Detective Slater viewed a booking photo of McCool and public Instagram account under the name "Young Terrific," a name McCool was reported to use. *Id*. at 15. Detective Slater matched McCool's appearance to the shirtless man from the footage. *Id*. Detective Slater also viewed booking photographs and a Facebook account associated with Defendant Jones and matched his appearance to the other man in the footage. *Id*.

**B.  Searches Related to Defendant's Phones and Facebook Account**

Defendant challenges a series of warrants and orders authorizing the search and seizure of his own data, including cell phone records and Facebook data. On December 14, 2017, a Multnomah County judge issued a warrant for Defendant's cell phone records, including historical cell cite data and Visitor Location Register information, from September 15–19, 2017. ECF 256-4. Ex. B. On December 20, 2017, a United States Magistrate Judge for the District of Oregon issued an order for Defendant's cell phone records. ECF 256-9, Ex. H. On October 28, 2019, a District of Oregon warrant was issued for Defendant's Facebook data from May 13, 2012 until the date of warrant execution. ECF 258, Ex. S. On November 8, 2019, a District of Oregon warrant was issued for Defendant's historical cell-tower and location data. ECF 256-3, Ex. A-1. And on March 26, 2020, a District of Oregon warrant was issued for Defendant's historical cell-tower and location data from December 20, 2017 through January 18, 2018 for a different phone number. ECF 256-5, Ex. C.

**C.  Searches of Phones and Data Belonging to Others**

Defendant challenges seven warrants and orders authorizing the search and seizure of other people's data, including cell phone records, text messages, and Facebook data. As explained in further detail below, Defendant lacks standing to challenge these warrants and

orders because he has neither a property interest nor a reasonable expectation of privacy in other people's data.

### D.  Searches of Defendant's Property and Property Belonging to Others

Third, Defendant challenges four warrants authorizing the search and seizure of places and things. On January 24, 2018, a Multnomah County warrant issued authorizing the search of Defendant's residence on Willakenzie Drive in Eugene, Oregon. ECF 257-2, Ex. A. On January 31, 2018, a Multnomah County warrant issued authorizing the search of Aronte Kearny's residence on Brockton Place in Eugene, Oregon. ECF 257-3, Ex. B. On February 2, 2018, a Lane County warrant issued authorizing the search of the office space of FOE Media Group and of Defendant's DNA. ECF 257-4, Ex. C. On February 20, 2018, Lane County warrants issued authorizing a second search of Aronte Kearny's Brockton Place residence as well as another residence on Elkay Drive in Eugene, Oregon where Aronte Kearny was known to spend time. ECF 257-6, Ex. E. As explained further below, Defendant has no standing to challenge the Brockton Place or Elkay warrants because he has neither a property interest nor reasonable expectation of privacy in those residences.

### E.  The E.H. Shooting and Warrants

After 4:00 a.m. on May 22, 2017, multiple gunmen broke into an apartment in Gresham and shot at the family inside. ECF 270-1, Ex. 1, at 2–3. 9-year-old L.H. and his mother C.T. were struck. *Id*. 2-year-old K.H. and her father E.H. Jr. were not hit. *Id*. at 2. Detectives recovered both 9mm and .40 caliber casings at the scene. *Id*. at 3. E.H. Jr. told investigators he was a member of the Woodlawn Park Bloods. *Id*. Detective Adam Wright learned that, at the time, there was an ongoing feud between the Woodlawn Park Bloods and the Hoovers. *Id*. at 4.

Investigators learned that a known Hoover gang member, Christopher Jordan, lived with his girlfriend near the scene of the shooting. *Id*. Investigators learned from Jordan's girlfriend

that Jordan received a call shortly before the shooting and that the caller said they were going to "hit" E.H. Jr. *Id*. at 5. Investigators then obtained Jordan's phone records and learned that he had received a call from Nakiem Brown, also a known Hoover, shortly before the shooting. *Id*. at 6, 9.

Detective Wright then applied for a search warrant for Nakiem Brown's cell phone records and learned that he was in the area of the shooting at the time of the shooting. *Id*. at 7–8. Brown and Jordan then travelled to an apartment where Rashad Banks, another known hoover, lived. *Id*. at 5–7. Brown's phone records also revealed extensive communications with Corey Hudson, a high-ranking Hoover, in the hours before the shooting. *Id*. at 7, 9–10.

Detective Wright obtained a warrant for Hudson's cell phone records. *Id*. at 10. By comparing the location data of Brown, Banks, and Hudson, Detective Wright determined that the phones belonging to all three made calls in the area of SE 136th Avenue and SE Division Street in a three-minute span shortly before the shooting; an overlay map shows that Defendant's last known residence was at the corner of SE 136th and SE Division. *Id*. at 11–12.

Investigators interviewed Brown twice. On June 1, 2017, Brown initially denied any involvement with the shooting. *Id*. at 9. He then admitted that he was in the area and named about 10 other Hoover gang members, but denied going into the apartment. *Id*. On June 23, 2017, after being arrested for attempted murder, Brown identified Christopher Simms-Barlow and "Low Down" as the shooters. *Id*. at 12–13. Brown claimed not to know "Low Down's" real name, but claimed he was an O.G. [Original Gangster] who had just gotten out of a federal penitentiary after serving eighteen years. *Id*. at 13. An investigator showed Brown a picture of Defendant and Brown confirmed that this was the person he knew as "Low Down." *Id*.

Based on this information, on June 23, 2017, Detective Wright applied for and obtained a Multnomah County search warrant to obtain Defendant's cell site, call detail, subscriber, and precision location information. *Id*. at 16. Defendant now challenges the validity of this warrant on the basis that it did not sufficiently alert the magistrate to the circumstances surrounding Nakiem Brown's identification. ECF 267 at 17.

### STANDARDS

The Warrant Clause of the Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, . . . and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The description in the warrant must be specific enough to guide the executing officer as to which items to search or seize. *See Marron v. United States*, 275 U.S. 192, 196 (1927). The "manifest purpose of this particularity requirement" is to prevent "wide-ranging exploratory searches" by "limiting the authorization to search to the specific areas and things for which there is probable cause to search." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). In addition, a warrant may not be overbroad and "the scope of the warrant [must] be limited by the probable cause on which the warrant is based." *United States v. SDI Future Health, Inc*., 568 F.3d 684, 702 (9th Cir. 2009) (quoting *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 856–57 (9th Cir. 1991)).

To support the issuance of a search warrant, an affiant must present evidence that gives the judge a "'substantial basis' for concluding probable cause existed" based on the totality of the circumstances. *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013) (alterations omitted) (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983)); *see also United States v. Weber*, 923 F.2d 1338, 1343 (9th Cir. 1990) (citing *Gates*, 462 U.S. at 238 (explaining that there need not be direct evidence of the specific alleged crime to create probable cause, but there must be a "substantial basis" for the finding).

This test requires a "common sense determination that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Mendonsa*, 989 F.2d 366, 368 (9th Cir. 1993) (quoting *Gates*, 462 U.S. at 238); *see also United States v. Seybold*, 726 F.2d 502, 504 (9th Cir. 1984) (citing *Gates*, 462 U.S. at 238) (explaining that the totality of the circumstances test requires a reviewing court to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place" (alteration in original)). While a court is free to draw "reasonable inferences" from the materials supplied to it, *see Gates*, 462 U.S. at 240, "all data necessary to show probable cause . . . must be contained within the four corners of a written affidavit given under oath." *United States v. Anderson*, 453 F.2d 174, 175 (9th Cir. 1971). "[T]he task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984); *see also United States v. McQuisten*, 795 F.2d 858, 861 (9th Cir. 1986) (noting that "[a] magistrate's determination of probable cause to issue a warrant is treated with great deference"). Nevertheless, conclusory statements regarding the affiant's beliefs are no substitute for facts the court can meaningfully evaluate. *Underwood*, 725 F.3d at 1082–83 (collecting cases).

Standing to challenge a search or seizure under the Fourth Amendment is a "threshold question" that a defendant must answer before this Court may consider whether the search itself was reasonable. *United States v. Ziegler*, 474 F.3d 1184, 1189 (9th Cir. 2007). The defendant bears the burden of establishing his Fourth Amendment rights were violated by the search. *United States v. Caymen*, 404 F.3d 1196, 1199–1200 (9th Cir. 2005) (internal citation omitted).

To do so, a defendant must show that he had either a property interest or a reasonable expectation of privacy in the place or thing searched or seized. *United States v. Lopez-Cruz*, 730 F.3d 803, 807 (9th Cir. 2013); *United States v. Padilla*, 508 U.S. 77, 82 (1993).

## DISCUSSION

**A. Motion to Suppress Evidence Derived from Searches of Cell Phones, Cell Phone Records, and Facebook Data (ECF 256)**

    **1. December 20, 2017 order authorizing the search and seizure of cell phone records for (971) 340-6543 (Defendant's phone)**

Defendant argues that the evidence obtained pursuant to the December 20, 2017 order must be suppressed because it constitutes a warrantless search of cell phone data over which Defendant maintained a reasonable expectation of privacy. ECF 256 at 14 (citing *Carpenter v. United States*, 138 S. Ct. 2207, 2217–18 (2018)). It is true that this evidence was pursuant to an order under the Stored Communications Act ("SCA"), 18 U.S.C. § 2703(d), rather than a warrant. *See* ECF 256-9, Ex. H at 1. But the order predates *Carpenter* and "it is hardly objectively unreasonable to rely on a then-lawful statute" which permitted obtaining CSLI via court order. *United States v. Korte*, 918 F.3d 750, 758–59 (9th Cir. 2019) (finding that the good-faith exception to the Fourth Amendment applied where the Government obtained CSLI by court order before *Carpenter*). As the Ninth Circuit noted in *Korte*, applying the exclusionary rule to pre-*Carpenter* reliance on the SCA does little to advance the exclusionary rule's purpose of deterring future Fourth Amendment violations. *Id*. at 759. Thus, this Court finds that evidence derived from the December 20, 2017 order falls under the good-faith exception to the Fourth Amendment and need not be excluded.

2.  **November 8, 2019 warrant authorizing the search and seizure of historical cell-tower and location data for (971) 340-6543 (Defendant's phone)**

Defendant argues that the November 8, 2019 Warrant was defective because (1) it failed to identify with particularity the evidence to be seized, (2) the warrant itself and the evidence derived therefrom is fruit of unconstitutional searches and seizures, and (3) the affidavit fails to establish probable cause that contraband or evidence would be found in the cell phone records. ECF 256 at 16–18. This Court disagrees.

Defendant's first contention that the affidavit "[m]erely identif[ies] crimes for which the affiant has probable cause" but "does not specifically state what evidence is sought" is without merit. ECF 256 at 17. The affidavit specifically states that it is seeking to search subscriber information (name, address, local and long-distance telephone connection records, length of service, and telephone or instrument numbers), user activity records, communications, "cell tower" and "sector" data, and historical geo-location services. ECF 256-3, Ex. A-1, at 4–5. The affidavit also states that the Government will only seize information "that constitutes evidence, fruits, and instrumentalities of . . . Violent Crime in Aid of Racketeering (VICAR) and Conspiracy to Commit Racketeering." *Id*. at 6. And while the crimes charged are VICAR and Conspiracy to Commit Racketeering, the affidavit outlines the more specific underlying offenses, which serves to narrow and clarify the scope of the warrant. *Id*. at 11 (identifying distribution and possession with intent to distribute controlled substances, Hobbs Act Robbery, sex trafficking of minors, firearms trafficking, and aiding and abetting the above offenses as underlying crimes). Taken as a whole, the affidavit is sufficiently specific in stating what evidence the Government sought through the cell phone records.

Defendant's second contention that the warrant itself is "fruit of unconstitutional searches and seizures" searches is also unavailing. ECF 256 at 17. Defendant incorporates his arguments

"provided in Sections B, D, and F of [his] motion" to argue that the warrant was invalid. *Id.* at 18. Section B refers to the argument that the December 20, 2017 order was invalid; but, as noted above, that order was valid because it was proper pre-*Carpenter*. *Id.* at 14. Section D refers to a December 14, 2017 Multnomah County warrant; as explained below, that warrant was also valid. *Id.* at 21. Finally, Section F refers to a December 14, 2017 Multnomah County warrant for Joel McCool's cell phone; as explained below, Defendant lacks standing to challenge this warrant. *Id.* at 26.

Defendant's third and final contention is that the affidavit fails to establish probable cause to support the search and seizure authorized in the warrant. *Id.* at 18. Primarily, Defendant challenges that the affidavit "includes multiple alleged criminal activities in which [he] was not involved, including the allegations in Paragraphs 17[–]24." ECF 256 at 19. While it is true that those paragraphs—among others—refer to criminal activity committed by other Hoover members, such allegations are presented under the headings "Enterprise Background," "Alliances and Rivalries of the Enterprise," and "Pattern of Racketeering Activity." ECF 256-3, Ex. A-1, at 11, 13, 14. But the affidavit goes on to present an entire section titled "Lorenzo Jones' Affiliation to the Enterprise and Racketeering Activity," *id*. at 17, and draws a connection between Defendant and the criminal conduct of the Hoovers generally.

Defendant also challenges the scientific validity of a forensic method relied on by the affidavit in connecting him to a shooting on December 23, 2017. ECF 256 at 19. But the only case Defendant cites in support of this argument analyzes the forensic toolmark evidence under the *Daubert* standard for admissibility of scientific evidence. *See United States v. Adams*, 444 F. Supp. 3d 1248, 1266 (D. Or. 2020). But probable cause in the context of a warrant is not subject to the *Daubert* standard. *See United States v. Riley*, No. 2:12-cr-00478-JAD-VCF, 2014 WL

PAGE 11 – OPINION AND ORDER

537013, at *3 (D. Nev. Feb. 7, 2014) ("Because probable cause is a fluid concept and the product of a 'practical, common sense' inquiry, probable cause does not rest on a scientific foundation or need to withstand cross-examination."). This Court must not take "a 'grudging or negative attitude' toward search warrants [or] 'a hypertechnical rather than a commonsense' analysis." *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc) Further, a magistrate judge's determination is entitled to great deference. *Id.* For these reasons, Defendant has not provided a persuasive rationale to depart from the magistrate's determination that the warrant was supported by probable cause.

### 3. December 14, 2017 warrant for cell phone records, including historical cell cite data and Visitor Location Register information, for (971) 340-6543 from September 15, 2017 through September 19, 2017 (Defendant's phone)

In objecting to the December 14, 2017 warrant, Defendant renews the arguments he raised in prior motions to suppress before the Honorable Michael W. Mosman, ECF 138–141, that the affidavits failed to establish probable cause that he was present or somehow involved in the Butler murder. ECF 256 at 21. But this Court has already denied Defendant's prior motion to suppress. ECF 168; ECF 190. In making that ruling, Judge Mosman addressed each alleged misstatement or omission in the affidavit and determined that none of them, even accepted as true, would impact the probable cause determination. ECF 178 at 6–8 (transcript of October 26, 2020 proceedings). "Issues that a district court determines during pretrial motions become law of the case." *United States v. Smith*, 389 F.3d 944, 949 (9th Cir. 2004) (quoting *United States v. Phillip*s, 367 F.3d 846, 856 (9th Cir. 2004). Defendant has not provided any reason to depart from Judge Mosman's prior rulings, but rather simply incorporates his prior arguments by reference. *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) ("A court may have discretion to depart from the law of the case where: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially

different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result."). This Court finds that Judge Mosman's ruling that the December 14, 2017 warrant was supported by probable cause stands.

In the instant motion, Defendant adds the argument that the warrant was overbroad because it allowed the search and seizure of location data from 12:01 a.m. on September 15, 2017 to 11:59 p.m. on September 19, 2017, whereas the Butler murder occurred at 1:41 a.m. on September 17, 2017. ECF 256 at 21. The Government counters that the time period leading up to and following a crime helps to establish patterns, pre-planning, relevant associations or coconspirators, possible motive, continued/discontinued patterns of conduct, or the location of evidence. ECF 269 at 13. This Court agrees with the Government's reasoning. Defendant has not cited any authority that a warrant for CSLI must be so tightly constrained to the time period of a crime. Nor does Defendant supply enough evidence for this Court to second-guess the magistrate's determination of probable cause. *See United States v. Gourde*, 440 F.3d at 1069.

Defendant then argues that "it appears that the government obtained cell site data for a broader range of dates than authorized in the [November 8] warrant," specifically May 19, 21, and 22, 2017 and December 2, 2017. ECF 256 at 22. But the Government points out that the December 2, 2017 CSLI was obtained pursuant to the November 8, 2019 federal warrant and the May 19–22, 2017 CSLI was obtained pursuant to a Gresham Police Department Warrant. ECF 269 at 12 n.4. As noted above, the federal warrant was valid; and Defendant has not challenged the Gresham warrant.

### 4. March 26, 2020 warrant for historical cell-tower and location data for (503) 415-0711 (Defendant's phone)

Defendant's challenge to the March 26, 2020 warrant, ECF 256 at 23, is moot because there is no evidence to exclude. *See United States v. Garcia*, 974 F.3d 1071, 1075 (9th Cir. 2020) ("The typical remedy for a Fourth Amendment violation is the exclusion of evidence discovered

as a result of that violation from criminal proceedings against the defendant."). Although the Government did attempt to seize CSLI from December 20, 2017 to January 19, 2018, the Government did not secure the warrant until after the carrier deleted the information. *See* ECF 269-2, Ex. 3 ("Historical cell site location information is maintained for approximately 24 months following usage. No timing advance records were found for your requested timeframe.").

### 5.  October 28, 2019 warrant authorizing the search and seizure of Defendant Jones's Facebook data from May 13, 2012 until the date of warrant execution

Defendant challenges the warrant authorizing the search and seizure of his Facebook data for a period of seven years as overbroad and lacking specificity. ECF 256 at 43–44. This challenge is also moot. The Government noted in its response, ECF 269 at 23, and affirmed at oral argument, it does not intend to offer any evidence derived solely from this warrant.

Even if this challenge were not moot, the warrant was proper. Defendant concedes that the affidavit established probable cause that he was a member of the Hoover gang, but argues that "that fact alone does not . . . support the scope of the warrant, and more specificity was reasonably possible." ECF 256 at 44. Defendant ignores that the affidavit states that the affiant had *already* viewed the publicly available portions of Defendant's Facebook page and viewed photos indicating gang-affiliation dating back to 2012. *See* ECF 258, Ex. S, at ¶¶ 81–84. The affidavit goes on to explain how and why Facebook data will be relevant to the investigation and likely to produce evidence of a crime. *Id.* at ¶¶ 152–53 (explaining that the Facebook data "may provide crucial evidence of the 'who, what, why, when, where, and how' of the criminal conduct,'" show "who has used or controlled the Facebook account," "allow[] investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation," and "provide relevant insight into the Facebook account owner's state of mind" such as motive, intent, or consciousness of guilt).

In making an overbreadth argument, Defendant correctly notes that the Fourth Amendment prohibits "general, exploratory rummaging." ECF 256 at 44 (quoting *In re Grand Jury Subpoenas*, 926 F.2d at 857). But here, the warrant required Facebook to disclose only certain types and categories of information (e.g., contact information, activity logs, uploaded photos and videos) related to Defendant's page. ECF 258, Ex. S., at 5. Moreover, the Government was only authorized to seize information "that constitutes evidence of violations of Conspiracy to Participate in Racketeering . . . and Violent Crime in Aid of Racketeering." *Id*. at 8. Far from a general exploratory rummaging, the facts here closely mimic the search of Facebook data in *United States v. Flores*, 802 F.3d 1028 (9th Cir. 2015). There, the warrant also "allowed the government to search only the Facebook account associated with [the defendant's] name and email address, and authorized the government to seize only evidence of violations of [the charged crimes]." *Id*. at 1044. The warrant here is neither overbroad nor unspecific, and this Court does not displace the magistrate's probable cause determination.

### 6.  Various warrants for cell phone data for phones belonging to other individuals

In addition to the five orders or warrants relating to his phones, Plaintiff also challenges (1) a December 14, 2017 Warrant for cell phone records, including historical cell cite data and Visitor Location Register information, for (541) 300-5081 (Joel McCool's phone); (2) a February 20, 2018 Order authorizing the search and seizure of call detail information, cell site tower information, and text message information for (541) 221-9472 (Aronte Kearny's phone); (3) a September 21, 2018 Warrant authorizing the search and seizure of historical cell tower data for (503) 840-5807 (Johnell Cleveland's phone); (4) a May 26, 2017 Warrant authorizing the search and seizure of historical cell tower data for (503) 484-8118 (owner unknown); (5) a January 9, 2020 Warrant authorizing the search and seizure of a black iPhone, a white iPhone, and a red iPhone (belonging to Donte Hunt, Aiesha Thomas, and Rylie Jones, respectively); (6)

an October 12, 2018 Warrant authorizing the search of eleven cellphones at Donte Hunt's residence; and (7) a June 5, 2017 Warrant authorizing the search and seizure of incoming and outgoing text messages for (502) 501-0759 (Rashad Banks) and (503) 849-9319 (Corey Hudson). ECF 256 at 26–43.

Defendant lacks standing to challenge the search or seizure of any of these phones, all of which belong to other individuals. Defendant maintains neither a property interest nor a reasonable expectation of privacy in the cell phone records, location data, or messages of third parties. *See United States v. Lopez-Cruz*, 730 F.3d 803, 807 (9th Cir. 2013); *United States v. Padilla*, 508 U.S. at 82; *see also United States v. Beaudion*, 979 F.3d 1092, 1099 (5th Cir. 2020) (finding no Fourth Amendment standing even where the defendant had purchased the phone for his girlfriend, had permission to use it, had password access to it, accessed his Facebook account from it, and used it to take photos and videos).

## B. Motion to Suppress Evidence from Searches and Seizures of Willakenzie Drive, Brockton Place, Elkay Drive, FOE Media Group, and Defendant's DNA (ECF 257)

### 1. Willakenzie Drive and Brockton Place (first search)

In challenging the Willakenzie Drive and first Brockton Place warrants, Defendant argues that "[Detective] Slater's affidavit in support of the cell-site warrant fails to establish probable cause that [Defendant] shot Butler and that Slater's material omissions or false statements in the affidavit require a *Franks* hearing." ECF 257 at 9. Defendant maintains that the "same deficiencies plague" the Willakenzie Drive and Brockton Place warrants. *Id.* at 10. Judge Mosman already considered and rejected these arguments. ECF 138, 168, 190. As noted above, Defendant may not now renew these arguments while providing this Court no reason to depart from Judge Mosman's earlier ruling. *See Smith*, 389 F.3d at 949 (quoting *Phillips*, 367 F.3d at 856); *Alexander*, 106 F.3d. at 876.

### 2. FOE Media Group and Defendant Jones's DNA

Next, Defendant challenges the warrant authorizing a search of FOE Media Group and his DNA. ECF 257 at 11. Defendant's only argument regarding this warrant is that the "affidavit relied in large part on prior search warrant affidavits and [the affiant's] conversations with the detectives investigating Butler's murder," and that "if the Court concludes that the prior warrants are unlawful, all unlawfully obtained evidence should be excised from the warrant." *Id*. As noted above, all of the warrants are either valid or Defendant lacks standing to challenge them. Because Defendant has not provided any independent challenge to this warrant, this Court will not invalidate it.

### 3. Brockton Place (second search) and Elkay Drive

Defendant similarly challenges the warrant authorizing the second search of Brockton Place and the search of Elkay Drive[1] because the affidavit relies on evidence discovered during Defendant's arrest, a firearm found in his Mercedes, on evidence from the first Brockton Place search, and on the FOE Media Group search. *Id*. at 12. As to evidence derived from Defendant's arrest and the firearm found in the Mercedes, Defendant has already moved to suppress this

---

[1] The Government argues that Defendant lacks standing to challenge the Elkay Drive search because it was Aronte Kearny's residence and Defendant has not shown that he lived or stayed there. ECF 271 at 5; *see* ECF 257-6 at 4–5. This Court agrees. The Government also argues that Defendant lacks standing to challenge the second Brockton place search because Defendant "had been in custody for two weeks by the time this warrant was issued . . . [so] any expectation of privacy that [he] may had had earlier in Brockton Place had dissipated by the time the warrant issued." ECF 271 at 5. This Court disagrees. In the first Brockton Place affidavit, the affiant presented evidence that Jones and Kearny "live[d] together" at the Brockton Place address. ECF 257-3, Ex. B, at 5–7. This gave Defendant standing to challenge the January 31, 2018 warrant, and there is no indication that Defendant stopped staying with Kearny in the next month.

evidence. ECF 137, 140. Judge Mosman has already denied those motions. ECF 174, 190.[2] As to

the Brockton Place and FOE Media Group searches, as noted, Defendant has only challenged

them tangentially by noting that those warrants relied on prior affidavits, warrants, and evidence

that Defendant has challenged. ECF 257 at 10–11. This Court reiterates that none of the

Defendant's underlying challenges have been successful, and they do not undermine the

Brockton Place or FOE Media Group searches. Thus, the evidence derived from those searches

was properly referenced in the second Brockton Place and Elkay Drive affidavit.

**C. Motion for a *Franks* Hearing and to Suppress Evidence Obtained from the Warrant for Defendant's Cell Cite, Call Detail, Subscriber, and Precision Location Information (ECF 267)**

Defendant also challenges a June 23, 2017 Multnomah County warrant authorizing the

search and seizure of historical cell tower data from May 22, 2016 through June 23, 2017, plus

thirty days of prospective data. ECF 267 at 17; ECF 267-3, Ex. B. Defendant argues that a

*Franks* hearing is warranted because the affidavit contained misstatements or material omissions

and, regardless of whether a hearing is granted, the warrant is facially invalid.

**1. *Franks* Hearing**

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court established the principle

that a defendant is entitled to a *Franks* hearing only if he makes a two-fold showing. *Id.* at 155–

56. First, he must make a "substantial preliminary showing that a false statement knowingly and

intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant

affidavit." *Id.*; *see also United States v. Saterstad*, 852 F. App'x 250, 251 (9th Cir. 2021).

Second, the defendant must demonstrate that "the false or misleading statement was material,

---

[2] This Court did grant leave to re-open the motion to suppress evidence from the arrest if new evidence comes to light, ECF 190, but Defendant has not provided any new evidence.

i.e., 'necessary to finding probable cause.'" *Id.* If the defendant is able to meet his burden by making these two showings by a preponderance of the evidence, the affidavit's false material will be set aside, and the remaining content will be judged to see if it is insufficient to establish probable cause. *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017); *see also United States v. Chesher*, 678 F.2d 1353, 1362 (9th Cir. 1982).

"False statements" extend to "omissions of material facts," and a defendant may challenge a warrant affidavit, although valid on its face, when it contains deliberate or reckless omissions of material facts. *United States v. DeLeon*, 979 F.2d 761, 763 (9th Cir. 1992). However, there is "a presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. at 171. A mistake—even one made negligently—will not suffice. *Perkins*, 850 F.3d at 1116.

Here, Defendant's motion for a *Franks* hearing fails at the first step because no false statement or material omission was included in the affidavit. Defendant argues that the affidavit "omits . . . Brown's pattern of lies in an attempt to get a plea deal." ECF 267 at 18. It is true that the affidavit relies in part on statements made by Nakiem Brown after he was arrested in connection with the May 22, 2017 shooting. ECF 267-2, Ex. A, at 12–13. It is also true that on June 1, 2017, "Nakiem Brown gave varying names for the Hoovers who carried out the shooting." *Id.* at 9. But the affidavit does not try to hide the weaknesses in Brown's statements; rather, the affidavit acknowledges, "At this time, the names [Brown] gave appear to be false." *Id.* Certainly, the magistrate could have weighed Brown's unreliability against the Government in making the probable cause determination. But it does not appear the that the affiant suggested that Brown's story was consistent or otherwise attempted to mislead the magistrate in any way.

Defendant also alleges that "[t]he affidavit omits the crucial fact that Brown later told [detectives] that he had lied about the identities of the people involved in the shooting, except for identifying 'JRymes' as one of the shooters." ECF 267 at 17. Indeed, a follow-up report written on September 8, 2017—months after the original affidavit—a detective recounted that Brown stated that "[h]e told me he could give me the real names of who it was. Mr. Brown said he gave me the wrong names. He said the only real name is JRymes . . . The names are lies." ECF 267-4, Ex. C, at 5. Again, the affidavit clearly informed the magistrate that Brown had given false names. Moreover, as the Government notes, after giving false names at first, Brown identified Defendant as a shooter and then "never backed away from those identifications; he never said he was lying about [Defendant]." ECF 277 at 17. The follow-up report cited by Defendant makes no representations about the chronology of Brown's statements. *See* ECF 267-4, Ex. C, at 1 ("The following is a brief summary of th[e] [June 23, 2017] interview for exact wording please see transcription to follow this report."). The Government argues that the audio makes clear that (1) Brown initially named "Freddie, Stink and JRymes"; (2) that he then admitted these names were false except for JRymes; (3) that he eventually gave JRymes's real name as Chris Simms; and (4) that only then did Brown reluctantly name "Low Down" (Defendant's street name) as the second shooter. ECF 277 at 17.[3] This is fully consistent with the information in the affidavit that Brown had given names on June 1, 2017 that were later found to be false. ECF 267-2, Ex. A, at 9.

---

[3] At the time the Government submitted its responsive briefing, no transcript of the interview existed; the Government averred that audio of the interview had been provided to Defendant in discovery and that a transcript would be created and filed. ECF 277 at 16 n.14. This Court has since had the opportunity to review the transcript, ECF 281-1, Ex. 4, and finds that it substantially corroborates the Government's stated version of events. Indeed, at oral argument Defendant's counsel confirmed that the audio recording and transcript confirmed the chronology proffered by the Government.

Defendant has not made a *substantial* showing that false statements or material omissions were made at all, much less that they were done knowingly or in reckless disregard for the truth. Accordingly, Defendant's motion for a *Franks* hearing is denied.

### 2. Facial Validity

Outside of his *Franks* challenge, Defendant challenges the facial validity of the warrant on grounds of specificity and overbreadth. First, Defendant argues that the warrant fails to identify with particularity the evidence to be seized. ECF 267 at 24. He claims that the "categories of evidence to be seized provided in the warrant are broad and unspecific." *Id*. But Defendant cites no case law that the categories at issue are impermissibly broad. Indeed, the warrant specifies that the cellular telephone provider must provide: (1) the ongoing, real-time location of the cell site/sector for a period of thirty days, (2) the precision location information for the cellular telephone handset for a period of thirty days, (3) subscriber information, (4) billing information, (5) incoming and outgoing text messages from May 22, 2016 through June 23, 2017, and (6) Call Detail Records and Mediation Reports, including CSLI and outgoing and incoming Voice, SMS, and Data transactions from May 22, 2016 through June 23, 2017. ECF 267-3, Ex. B. While the categories may be broad, they identify the specific types of information to be searched; moreover, the warrant limits what data may be seized by reference to the specific crimes alleged. *Id*. at 1.

Second, Defendant argues that the warrant is also overbroad because it seeks a years' worth of historical location data and text messages prior to the shooting, and thirty days of location information after the shooting. ECF 267 at 24–25. At oral argument, this Court reserved ruling on whether the warrant was overbroad in terms of the length of time over which it permitted the Government to search the Defendant's data. ECF 286. This Court now holds that the warrant was not overbroad. The affidavit described long-term patterns of communications

between suspects, including between Defendant and Corey Hudson dating back to December 2016. ECF 270-1, Ex. 1, at 10. The affidavit also relies on a spike in communications between Defendant and Hudson in the twenty-four hours leading up to the shooting. *Id*. In addition, Defendant's communications with, and locations in relation to other suspects, over a long period of time, including after the shooting itself, can reveal affiliations, motive, intent, consciousness of guilt, or other relevant facts about the crime under investigation. Critically, although the affidavit sought evidence of a murder that occurred on May 22, 2017, it explicitly mentioned a feud between the Hoovers and the Woodlawn Park Bloods dating back to August 2014 when E.H.'s sister was murdered. ECF 267-2, Ex. A, at 4–5. The connection between E.H.'s sister's murder in 2014, a longstanding feud between the Hoovers and the Bloods, and the shooting at E.H.'s apartment justified investigating the current crime as part of a larger pattern of violence and vengeance between the two groups. Thus, this Court finds that the warrant was appropriately limited in scope both retrospectively and prospectively.

Third, Defendant argues—as he has with many of the warrants at issue in these motions—that this warrant is itself the fruit of other, invalid warrants. Specifically, Defendant invokes his challenges to the warrants for Corey Hudson's, Nakiem Brown's, and Rashad Banks's cell location data. ECF 267 at 25 (citing ECF 256 at 32, 41; ECF 256-8, Ex. F; ECF 256-19, Ex. R). As noted above, Defendant lacks standing to challenge those warrants because they do not implicate cell location data in which he has a reasonable expectation of privacy.

Finally, Defendant argues that the Government obtained data for a broader range of dates than authorized in the warrant, specifically September 17, 2017 and December 1–2, 2017. ECF 267 at 26. Defendant argues that this Court must suppress the information from these dates regardless of whether the warrant was valid. *Id*. (citing *United States v. Sedaghaty*, 728 F.3d 885,

914 (9th Cir. 2013) (officers executing a search warrant may not search or seize items that are beyond the scope of the warrant)). This Court notes that data from September 17, 2017 was obtained pursuant to the lawful warrant issued December 14, 2017 and that data from December 1–2, 2017 was obtained pursuant to the lawful warrant issued November 8, 2019 warrant. *See* ECF 256-3, Ex. A-1; ECF 256-4, Ex. B.

For these reasons, the warrant is not facially invalid, and the evidence derived from it need not be suppressed.

## CONCLUSION

Defendant's Motion to Suppress Evidence Derived from Searches of Cell Phones, Cell Phone Records, and Facebook Data, ECF 256, is DENIED. Defendant's Motion to Suppress Evidence Derived from Searches and Seizures of Willakenzie Drive, Brockton Place, Elkay Drive, FOE Media Group, and Defendant's DNA, ECF 257, is DENIED. Defendant's Motion to Suppress Evidence Obtained from Warrant for Defendant's Cell Cite, Call Detail, Subscriber, and Precision Location Information and Motion for *Franks* Hearing, ECF 267, is DENIED.

**IT IS SO ORDERED**.

DATED this 28th day of April, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge