IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:19-cr-00333-IM |
| v. | **OPINION AND ORDER** |
| **RONALD CLAYTON RHODES**,<br>**a/k/a "Big Fly,"**<br>**LORENZO LARON JONES**,<br>**a/k/a "Low Down,"** | |
| Defendants. | |

**IMMERGUT, District Judge.**

Pending before the Court are Defendants' Joint Motion to Limit Drug Trafficking Expert Testimony, ECF 288 and the Government's Motion to Exclude Expert Testimony of Defense Witnesses, ECF 297. As outlined below, Defendants' motions related to drug trafficking testimony, ECF 288 is DENIED. The Government's motion to exclude Defendants' expert witnesses, ECF 297, is GRANTED IN PART and DENIED IN PART. With respect to Professor David Faigman and Dr. Nicholas Scurich, the motion is denied as moot because the defense agrees that these witnesses will not testify other than at upcoming *Daubert* hearing with respect to toolmark analysis. The Court grants the motion to exclude Dr. Neuschatz's testimony because it impinges on the jury's role to determine witness credibility. The Court grants the motion to

PAGE 1 – OPINION AND ORDER

exclude Dr. Cureton's testimony because Defendants have not demonstrated that his opinion is based on sufficient facts and knowledge. The Court denies that motion as to Mr. Cohen and Mr. Noedel. To the extent that the Government challenges any particular aspect of their shooting scene reconstructions, it may engage in robust cross-examination to demonstrate those alleged deficiencies to the jury.

## STANDARDS

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"Under *Daubert*[1] and its progeny, including *Daubert II*[2], a district court's inquiry into admissibility is a flexible one." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014) (citing *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.,* 738 F.3d 960, 969 (9th Cir. 2013)). The trial court serves as "a gatekeeper, not a fact finder." *Primiano v. Cook,* 598 F.3d 558, 565 (9th Cir.2010) (internal quotation marks and citation omitted). The court "screen[s] the jury from unreliable nonsense opinions" but does not "exclude opinions merely because they are impeachable." *Alaska Rent-A-Car*, 738 F.3d at 969–70 "The district court is not tasked with

---

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

[2] *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311 (9th Cir. 1995).

deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id*.

Before admitting expert testimony into evidence, district court judges must determine whether the evidence is reliable and relevant under Rule 702. *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565 (internal quotation marks and citation omitted). "Reliable expert testimony need only be relevant, and need not establish every element that the plaintiff must prove, in order to be admissible." *Id*.

Determinations surrounding the reliability of scientific expert testimony are guided by the factors outlined by the Supreme Court in *Daubert*. *See Daubert*, 509 U.S. at 593–95 (outlining the non-exclusive factors of (1) general acceptance in the scientific community, (2) peer review and publication, (3) testability, and (4) error rate). Courts have recognized that this inquiry is flexible, and that these factors "neither necessarily nor exclusively appl[y] to all experts or in every case." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). The court must consider whether the rate of error is sufficiently low, though the Ninth Circuit has said a methodology "need not be flawless in order to be admissible." *United States v. Prime*, 431 F.3d 1147, 1153 (9th Cir. 2005). Finally, another "significant fact" is whether the expert is testifying "about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Daubert II*, 43 F.3d at 1317.

The *Daubert* standard of reliability applies not only to scientific testimony but also to testimony based on technical or other specialized knowledge. *Kumho Tire Co., Ltd.*, 526 U.S. at 141. But the Supreme Court also made clear that "the law grants a district court broad latitude when it decides *how* to determine reliability," and that the *Daubert* factors "neither necessarily nor exclusively appl[y] to all experts or in every case." *Id.*; *see also id.* at 151 (explaining that certain factors may be more or less relevant depending on the particular facts at issue). The Ninth Circuit has explained that when applying *Daubert* to non-scientific expert testimony, the district court "may consider the specific factors identified where they are reasonable measures of the reliability of proffered expert testimony," but the court is not bound to "mechanically apply the *Daubert* factors." *U.S. v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (citation omitted). For example, the Ninth Circuit noted that the "*Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable" to the testimony of a gang expert, "whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Id.* at 1169. In that case, it was proper for the court to instead consider the expert's lengthy experience working with the specific gangs and gang members at issue and the basis of his opinions in "day-to-day police activity." *Id.* at 1169–70; *see also United States v. Brooks*, 610 F.3d 1186, 1196–97 (finding no error in admission of police detective's expert testimony based on her "training and experience," and noting that "[t]he fact that [the expert] lacked an advanced degree, supervisory experience, previous experience as an expert witness, or relevant publications did not render her unfit to provide expert testimony").

## DISCUSSION

### A.  Drug Trafficking Expert Testimony (ECF 288)

The Government intends to offer Drug Enforcement Agency ("DEA") Group Supervisor ("GS") Morgan Mathies as a drug trafficking expert. ECF 272 at 21. Defendants do not

challenge that GS Mathies may testify about types of controlled substances and coded language used to describe them. ECF 288 at 2. Rather, Defendants challenge "drug trafficking profile evidence, including 'tactics and methods commonly used by drug dealers, and techniques that drug dealers often use to avoid detection from law enforcement.'" *Id*. (quoting ECF 272 at 22).

To the extent that Defendants asserts that GS Mathies is not "an expert in the particular practices of the Portland Hoover gang," the motion is moot. ECF 288 at 6. As outlined in their expert notice, ECF 272, the Government agrees that GS Mathies will not opine on whether the Hoovers match a general profile of a drug trafficking organization, the Hoovers' alliances or rivalries, or the hand signals used by Hoover gang members. *See* ECF 288 at 12–13. Rather, GS Mathies will testify "regarding generic drug trafficker *modus operandi*." ECF 298, 2.

Taking into account those restrictions, GS Mathies' proposed testimony is admissible drug *trafficking* profile evidence. Defendants cite *United States v. Webb*, 115 F.3d 711 (9th Cir. 1997) for the proposition that "the Ninth Circuit has warned that profile evidence should be offered to establish *modus operandi* 'only in exceptional, complex cases." ECF 288 at 7 (quoting *Webb*, 115 F.3d at 715). But *Webb* addressed the propriety of drug *courier* profile evidence: "a drug courier profile is . . . a somewhat informal compilation of characteristics believed to be typical of persons *carrying* narcotics . . . We have noted that drug-courier profile evidence is inherently prejudicial." 115 F.3d at 715 (citation omitted); *see also Reid v. Georiga*, 448 U.S. 438, 440 (1979) (per curiam).

Notwithstanding the limits on drug courier profile evidence, "Government experts may testify as to the general practices of criminals [in order] to establish the defendants' modus operandi which helps the jury to understand complex criminal activities, and alerts it to the possibility that combinations of seemingly innocuous events may indicate criminal behavior."

*United States v. Freeman*, 498 F.3d 893, 906 (9th Cir. 2007) (internal quotations marks and citation omitted). Indeed, the Ninth Circuit "ha[s] allowed modus operandi testimony that drug traffickers often employ counter-surveillance driving techniques, register cars in others' names, make narcotics and cash deliveries in public parking lots, and frequently use pagers and public telephones." *Id.* (quoting *United States v. Valencia Amezcua*, 278 F.3d 901, 909 n.4 (9th Cir. 2002)). Similarly, "'[d]rug jargon] is a proper subject for expert testimony," though "law enforcement testimony about the meaning of drug jargon may be both expert and lay testimony." *United States v. Reed*, 575 F.3d 900, 922 (9th Cir. 2009) (explaining that testimony about coded terms is "the subject of expert testimony when based on the witness's experience investigating narcotics offenses" but lay testimony "when based on the witness's knowledge of the particular case and the defendants").

To the extent that Defendants challenge GS Mathies' testimony on the grounds that it will introduce "mental state opinion," drug trafficking modus operandi evidence does not implicate this concern. *See* ECF 288 at 14 (quoting *United States v. Cerna*, No. CR 09-0730 WHA, 2010 WL 11627594, at *8 (N.D. Cal. Dec. 17 2010)). As the Government notes, *Cerna* was a case involving gang experts and the specific testimony at issue "cover[ed] the existence, structure, history, and organization of MS-13." *Id.* at *3. In the context of a drug trafficking expert, the Ninth Circuit has held that such an expert does not necessarily introduce improper mental state evidence even when the expert testifies "that a 'person' possessing the evidence in question would, in fact possess the drugs for the purpose of distributing." *United States v. Gonzales*, 307 F.3d 906, 911 (9th Cir. 2002). Indeed, the Government may go so far as to "ask an expert hypothetical questions regarding the intent to distribute narcotics of a typical person in roughly

the same situation as the defendant." *United States v. Younger*, 398 F.3d 1179, 1190 (9th Cir. 2005).

Defendants are not accused of being drug couriers. Rather, some of the alleged overt acts constituting RICO activity stem from alleged drug distribution. Because of this, drug trafficking modus operandi evidence is permissible. The Court determines that a *Daubert* hearing is not necessary to resolve this motion. Defendants' Joint Motion to Limit Drug Trafficking Expert Testimony, ECF 288, is DENIED.

**B. Defense Expert Witnesses (ECF 297)**

The Government moves to exclude from trial six defense experts for lack of relevance, undue prejudice, and failure to qualify under *Daubert*: (1) Dr. Jeffrey Neuschatz; (2) Dr. Steven Cureton; (3) Joshua Cohen; (4) Matt Noedel; (5) Professor David Faigman; and (6) Dr. Nicholas Scurich. ECF 297 at 1.

The Government acknowledges that Professor Faigman's and Dr. Scurich's "testimony is relevant at the *Daubert* stage" but argues that it is not relevant at trial. ECF 297 at 21. Defendants confirmed in response that these witnesses will only testify at the *Daubert* hearing. ECF 304 at 3. Accordingly, the Government's motion is denied as moot with respect to Professor Faigman and Dr. Scurich. The Court addresses the remaining experts in turn.

**1. Dr. Neuschatz**

Without opining on the credibility of any one witness, Dr. Neuschatz would testify about the factors that impact confessions and secondary confessions. ECF 273 at 12. ECF 287 at 32. The parties agreed that Dr. Neuschatz's testimony is not necessary for the resolution of this motion. The Government moves to exclude Dr. Neuschatz's testimony as irrelevant under Federal Rule of Evidence 401, likely to confuse or mislead the jury under Federal Rule of Evidence 403, and unhelpful or unreliable under Federal Rule of Evidence 702. ECF 297 at 6.

Professor Neuschatz's proposed testimony would not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). To be admissible, expert testimony must address "an issue beyond the common knowledge of the average layperson." *United States v. Hanna*, 293 F.3d 1080, 1086 (9th Cir. 2002) (internal quotations marks and citations omitted). But determining the credibility of a witness is squarely within the common knowledge of the average layperson because "the jury is the lie detector in the courtroom." *United States v. Barnard*, 490 F.2d 907, 912 (9th Cir. 1973).

Defendants seeks to have Professor Neuschatz testify as an expert on a lay issue that is *not* beyond the common knowledge of the average layperson. Because Professor Neuschatz's expert testimony on the general credibility of incentivized witnesses would invade the province of the jury, it cannot qualify as expert testimony. *See United States v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989) ("An expert witness is not permitted to testify specifically to a witness' credibility . . . ."); *see also United States v. Ancrum,* 161 F. App'x 258 (4th Cir. 2006) ("Providing unreliable testimony in exchange for a lesser sentence is a topic which is 'within the common knowledge of the jurors.'") (quoting *United States v. Harris*, 995 F.2d 532, 534 (4th Cir. 1993)); *United States v. Lagrone*, No. 4:17-CR-00264-O, 2018 WL 10447060, at *3–4 (N.D. Tex. Mar. 25, 2018) (finding expert testimony about informant witnesses propensity to fabricate testimony "invades the province of the jury in determining the credibility of witnesses"). Accordingly, Professor Neuschatz's testimony is unhelpful and does not satisfy the requirements of Federal Rule of Evidence 702. *See Ancrum,* 161 F. App'x at 259 (finding expert testimony about cooperating witness motivations unhelpful under Rule 702); *Lagrone*, 2018 WL 10447060, at *3–4 (same).

The Court also notes that other district courts have previously excluded substantially identical testimony by Dr. Neuschatz. In *United States v. Benedict*, a District of Minnesota court found that Dr. Neuschatz's testimony about "the evidence of cooperating witnesses" would not be helpful to the jury and did not satisfy the requirements of Federal Rule of Evidence 702. No. 13-CR-150 (SRN/FLN), 2013 WL 6500120, at *2-3 (D. Minn. Dec. 11, 2013). The Eighth Circuit affirmed, concluding that Professor Neuschatz's testimony was nothing more than "a thinly veiled comment on a witness' credibility." *United States v. Benedict*, 855 F.3d 880, 885 (8th Cir. 2017). In *United States v. Chavez*, a Northern District of California court found that Dr. Neuschatz's testimony about "the general credibility of cooperating witnesses and incentivized informants" was deficient under Rule 702. No. 15-CR-00285-LHK-1, 2021 WL 5810298, at *1 (N.D. Cal. Dec. 7, 2021).

In addition, Ninth Circuit Model Criminal Jury Instruction 4.9 specifically instructs juries how to assess the credibility of a witness who is incentivized by "benefits," "compensation," or "favored treatment" from the government. Specifically, Model Instruction 4.9 cautions the jury that "in evaluating the testimony of [name of witness], you should consider the extent to which or whether [his] [her] testimony may have been influenced by [this] [any of these] factor[s]. In addition, you should examine the testimony of [name of witness] with greater caution than that of other witnesses." *Id.* Moreover, the Ninth Circuit has repeatedly emphasized that witness credibility is the sole province of the jury. *See United States v. Ramirez-Rodriquez*, 552 F.2d 883, 884 (9th Cir. 1977) ("[T]he exclusive function of the jury is to weigh the credibility of witnesses."); *Candoli*, 870 F.2d at 506 ("The jury must decide a witness' credibility.").

Accordingly, The Court GRANTS the Government's motion to exclude Dr. Neuschatz's testimony.

2.  **Dr. Cureton**

Dr. Cureton would testify about the reasons why Black boys and men join street gangs, the formation of the Hoovers in Portland, and his opinion that the Hoovers operate without a strict hierarchy and that members commit criminal acts for their own benefit rather than the benefit of the gang. ECF 273 at 5–6. The parties agreed that Dr. Cureton's testimony is not necessary for the resolution of this motion.

The Court finds Dr. Cureton is not qualified under Rule 702 to testify as an expert regarding the Portland Hoovers. While Dr. Cureton has knowledge about gangs in general, or the Los Angeles and North Carolina Hoovers specifically, his knowledge and experience regarding the Portland Hoovers is lacking. Dr. Cureton's knowledge of the Portland Hoovers appears to be limited to seven interviews conducted in July 2021 and one interview conducted in October 2021. ECF 287, 25. Those interviews constitute only 20 hours of research into the Portland Hoovers. Additionally, Dr. Cureton's declaration only indicates two of those eight witnesses had knowledge about the Portland Hoovers specifically. ECF 287, 25-29. Those two individuals "represented themselves as being present during the origin of Hoovers in Portland" and, according to Dr. Cureton's declaration, did not appear to provide any information within the past 20 years regarding the Portland Hoovers. Two of the witnesses spoke not about the Portland Hoovers, but instead "discussed the impact of Portland's gentrification on African American communities." ECF 287, 28. Dr. Cureton states:

> The consensus from the [EIGHT] (8) interviewed subjects (relied upon) is that loyalty and obedience to older gangsters has not survived as action mandates for younger generations of gangsters. Stated another way, older gangsters are not dictating how younger gang members are engaging in gang activity.

ECF 287, 29.

The Court agrees with the government that Dr. Cureton lacks the expertise and knowledge regarding the Portland Hoovers to qualify as an expert under Rule 702. Turning to the two cases Defendants point to merely confirms that Dr. Cureton's proposed testimony falls short. First, Defendants cite to *United States v. Hankey*, 203 F.3d 1168-69 (9th Cir. 2000). ECF 304, 8. The gang expert there, however, worked for over 20 years as a police officer in the specific gang's locale. *Hankey*, 203 F.3d at 1168. The expert worked undercover with "thousands" of gang members and "had extensive personal knowledge regarding the two affiliated gangs" those defendants were members of. *Id.* at 1168-69. Finally, he was familiar with both defendants before the acts at issue, as both defendants previously admitted to the expert that they were members of the gang. Dr. Cureton lacks similar knowledge and experience with the Portland Hoovers.

Dr. Cureton's knowledge of the Portland Hoovers also stands in stark contrast to the gang expert in *U.S. v. Padilla*, 387 F.3d 1087 (9th Cir. 2004). There, the gang expert had "extensive experience with Los Angeles street gangs, *and with the Cuatro Flats gang in particular*. . . ." *Id.* at 1094 (emphasis added). Again, Dr. Cureton lacks such knowledge with respect to the Portland Hoovers and his proposed testimony lacks the reliability and knowledge required of expert testimony under Rule 702.

### 3. Joshua Cohen and Matt Noedel

Mr. Noedel will testify to his opinion on the general location and movement of the shooters as well as the paths of the bullets fired at the Garcia and Butler murder scenes. ECF 273 at 11. Mr. Noedel concluded the shooter of the Glock "was directing shots generally from east toward west" of the parking lot and the shooter of the Luger "fired from a location near the middle of the street north of the Kateri Park apartments as well as in the alcove area immediately north of the door to the Kateri Park apartments." ECF No. 297-2, 6. Mr. Cohen will provide

foundational testimony for the three-dimensional ("3D") visualizations of the Butler and Garcia murders and explain how 3D models function. ECF 273 at 8.

The Court agrees with Defendants that the government's challenge here is based not on challenges to bullet trajectory or 3D modelling generally, but instead on a dispute based on the locations of the shooters and victim at the Butler murder scene. For example, the government argues "the trajectory analysis rests on an objectively false premise: that Butler was 'exiting the north door of the Kateri Park apartments when he began to get shot.' The evidence does not support this characterization of Butler's location when the shooting began." ECF 297, 15 (internal citation omitted). Similarly, the government also argues one diagram "inaccurately depicts Mr. Butler's location at the time of the first bullet strike on the building as being directly in front of the apartment door." ECF 297, 17. Rather than barring the opinion testimony under Rule 702, the Court finds the government's challenges to the reliability of the opinions of Mr. Noedel and Mr. Cohen are better suited for robust cross examination.

## CONCLUSION

Defendants' Joint Motion to Limit Drug Trafficking Expert Testimony, ECF 288, is DENIED. The Government's motion to exclude Defendants' expert witnesses is DENIED as to Mr. Noedel and Mr. Cohen and GRANTED as to Dr. Neuschatz and Dr. Cureton. The Court will hear testimony regarding the government's proposed Toolmark evidence on August 4 and 5, 2022.

**IT IS SO ORDERED**.

DATED this 15th day of July, 2022

/s/ Michael McShane
Michael J. McShane
United States District Judge